## SUSANNA LIGHT v. D. W. ZELLER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LEBANON COUNTY.

Argued February 18, 1889.
Re-argued February 18, 1890—Decided November 11, 1891.
[To be reported.]

(a) Several tracts of land, of a decedent leaving seven children to survive
him, were partitioned in the Orphans' Court, when the husband of one
of the heirs appeared in right of his wife and elected to take and was
awarded one tract, both husband and wife entering into a recognizance,
duly approved, conditioned that they should pay out the several shares
of the other heirs.

(b) Eighteen months afterward, cross-releases were executed between the
husband and wife, and the other heirs to whom other lands were
awarded in the same proceeding, when all the wife's interest in her
father's estate, together with a small amount supplied by the husband
from his own funds, was applied to the payment of owelty to the other
parties in interest.

(c) In ejectment by the wife against a purchaser in possession of the
tract allotted, sold at sheriff's sale as the husband's property after no-
tice of the wife's claim of title, there was testimony that the husband
and wife, on the eve of the allotment, had agreed that the former
should take the land for the latter, whose interest in the estate should
be applied to the purchase money:

1. The jury having found, under sufficient testimony and proper instruc-
tions, in favor of the wife as to the agreement, the wife, entitled, at all
events, to the undivided one seventh of the land as her own share, was
entitled, also, under a trust springing from the agreement, and the
allotment, recognizance, and payment in pursuance of it, to a part of
the remaining six sevenths proportionate to the purchase money she
supplied.

2. The recognizance entered into operated at the time, proprio vigore,
as an appropriation of her interest in the entire valuation money, as far
as it went, to the appraised value of the purpart taken by her husband
for her benefit; and the fact that the actual calculation and application
was not made for several months afterward, did not affect the rights of
the parties.

3. Acts and declarations of the husband, after the allotment of the land
to him and before the sale of it from him, indicating his ownership of
the title to the land in dispute, were susceptible of explanation; more-
over, they were the acts of the husband alone, for which the wife would
not be held responsible unless she had actively participated in them.

Statement of Facts.

Argued before Paxson, C. J., Green, Clark, Williams and McCollum, JJ.; re-argued before a full Bench.

No. 449 January Term 1887, Sup. Ct.; court below, No. 45 April Term 1886, C. P.

On February 9, 1886, "Susanna Light and Reuben L. Light, her husband, for the use of said Susanna," brought ejectment against Daniel W. Zeller and John H. Bixler (a tenant perhaps), to recover a tract of land containing 123 acres, 64.7 perches in North Lebanon township.   Issue.

At the trial, on March 7, 1887, the case presented upon the evidence was to the effect following:

Jacob Light died some time early in 1874, leaving several tracts of land and seven children surviving him, one of said children being Susanna, the wife of Reuben L. Light; in the same year, by proceedings in the Orphans' Court the decedent's lands were partitioned, and on August 17, 1874, the heirs, etc., being called in open court, as shown by the record in evidence, "Reuben L. Light, intermarried with Susanna Light, the youngest daughter of said deceased, in the right of his wife appearing [ed], and elected to take the purpart designated No. 2," containing 123 acres and 64.7 perches, valued and appraised at the sum of sixty-five dollars per acre, amounting in the aggregate to the sum of $8,021.24; and, none of the parties interested offering more, " the said tract of land was allotted and adjudged to the said Reuben L. Light, by the court, and to his heirs and assigns forever;" and it was ordered "that the said Reuben L. Light do enter into a recognizance," in the sum of $16,042.48, "conditioned to secure the respective shares of the heirs and legal representatives of the said deceased in the valuation aforesaid; and giving Joseph T. Light and Asaph S. Light, as bail, who are hereby approved by the court, for the faithful performance of the conditions aforesaid, and for the further condition to secure the payment of the respective shares of the said heirs and legal representatives of the said deceased in the valuation money aforesaid, on the first day of April, A. D. 1875."   Other purparts were at the same time allotted to Elizabeth Wittenmoyer and Leah Shoemaker, other married daughters of the deceased.

The recognizance drawn up and filed, as above referred to,

### Statement of Facts.

recited that, " Reuben L. Light, in right of his wife Susanna Light, daughter and heir at law of said decedent, appears in open court and prays to take that part of the real estate of said decedent marked No. 2, . . . . and offer Joseph T. Light and A. S. Light, . . . . as bail, of whom the court approve ; " and proceeded : " We, the said Reuben L. Light, Susanna Light, Joseph T. Light and A. S. Light, and each of us, do hereby acknowledge ourselves to owe and be indebted to the commonwealth of Pennsylvania in the sum of $16,042.48, . . . . on condition that Reuben L. Light and Susanna Light do pay, or cause to be paid unto the other heirs and legal representatives of said decedent their respective shares and proportionable parts of, in, to, and out of that part of said real estate, marked in the diagram aforesaid No. 2, valued and appraised at $8,021.24, . . . . on the first day of April, A. D 1875, then the recognizance to be void, otherwise," etc.   This recognizance was signed by Susanna Light, Reuben L. Light, Joseph T. Light and Asaph S. Light, in this order.

Reuben L. Light and Susanna Light testified that, before the allotment of the land in the Orphans' Court, they inquired of Mr. Meyer Light, the attorney for the estate, how they should do to take the farm for Mrs. Light, and that he told them that Mr. Light should take the farm in right of his wife ; that Mr. Light agreed to take the farm for his wife, and her " inheritance " was to pay for it.   In this they were corroborated partly by the testimony of Hiram U. Light.   Joseph T. Light and Asaph S. Light, the sureties in the recognizance, testified that they went upon the recognizance upon the assurance of Reuben L. Light that he was taking the farm for his wife. Daniel W. Zeller, the defendant, testified, on the other hand, that he was present in the office of Meyer Light when the plaintiffs inquired about the manner of taking the farm, and that one of them, he thought it was the husband, asked how he could get the farm in his own right; that Susanna Light desired her husband to have the credit of owning the farm; and that Meyer Light told them he must take it in her right for himself.   Zeller was the husband of one of Susanna Light's sisters.

It was made to appear, further, that in April, 1876, cross-releases were executed and delivered by the persons to whom

purparts had been allotted. One of these releases recited that purpart No. 2 had been allotted to Reuben L. Light, his heirs and assigns, and that Reuben L. Light had " this day " paid the shares of the releasors therein. Testimony was adduced to show that to make up the amount due and payable to the other heirs and parties interested, for their shares in the lands allotted to Reuben L. Light, the entire share of Susanna Light in the estate of her father, real and personal, was applied, and that there was still lacking the sum of $1,208.19, which was paid by Reuben L. Light out of funds raised by himself. The exact date when this settlement was made did not appear.

From the taking of the farm until it was sold from him, it was assessed for taxes in the name of Reuben L. Light. In 1883, the barn and its contents, products of the farm, were destroyed by fire; and, under the rules of the insurance company insuring the same, Reuben L. Light made an affidavit that the barn and contents were owned by him, and obtained the insurance for the loss.

On June 10, 1884, Reuben L. Light executed a judgment bond in the sum of $16,000, conditioned for the payment of $8,000 to Jonathan Beckley, in trust for the absolute use of Susanna Light, payable on or before June 11, 1884. On June 12, 1884, judgment was entered on this bond; but, on September 15, 1884, the attorney for the plaintiff satisfied the judgment by the following entry: " The above judgment having been entered in the absence of Susanna Light and without her knowledge and consent, and as she declines to accept it and desires me to remove the same I do hereby enter satisfaction, as the same was inadvertently entered."

On July 24, 1884, judgment was entered against Reuben L. Light in favor of J. H. Uhler, for $917.10. A fieri facias being issued thereon, a levy was made upon personal property, when Reuben L. Light made claim, under the exemption law, to the oats, wheat, rye and corn, products of the farm, and the same were appraised and set apart for him. Susanna Light made claim to the household and kitchen furniture as her separate property.

On October 7, 1884, a venditioni exponas was issued upon said judgment of J. H. Uhler, and on November 1, 1884, the interest of Reuben L. Light in the farm in controversy was

Charge of Court below.

sold to D. W. Zeller, after notice given of the claim of title of
Susanna Light; the sheriff's deed to the purchaser being exe-
cuted, acknowledged and delivered on November 13, 1884.
Thereafter he obtained possession by proceedings before a jus-
tice of the peace, under §§ 105–112, act of June 16, 1836, P.
L. 780, and was in possession when this suit was brought.

At the close of the testimony, the court, McPherson, J.,
charged the jury:

This case narrows itself down to one question of fact upon
which all the evidence on the one side or the other will be
found to bear; that is to say, whether Susanna Light is entitled
to what is known in law as a resulting trust in this property.

[A resulting trust is a trust that is held to exist in favor of
a person who has furnished the purchase money for land the
title to which is taken in the name of somebody else;] [10] that
is the only form of it that need concern us in this case. In
other words, the person who in justice is the real owner of the
land, whose money really paid for it, is held to be the true
owner, although the paper or legal title may be in somebody
else; and, unless he has done something to prevent himself
setting up that right, or unless a higher right exists in a pur-
chaser without notice of his equity, he may enforce it. Now,
that is the sort of trust that is set up here on the part of Mrs.
Light. It is claimed that she is entitled to a resulting trust in a
considerable portion of this land, based upon the fact, as alleg-
ed, that she furnished a considerable portion of the purchase
money; that she was the true buyer of this portion; and that,
although her husband took the title, he took it under an agree-
ment which compels him to hold it in trust for her. It is con-
ceded by both sides that in any event she is entitled to an
undivided one seventh of this land, and for that amount at
least, a verdict must be rendered in her favor.

The dispute is, whether she is entitled to any more than that;
and I may as well say here all that need be said about the pro-
portion, in case your verdict is for the full amount of her claim.
If, under the principles which I will lay down to you in a mo-
ment, she has established her claim to your satisfaction, then
the full amount of her right would be measured by the propor-
tion borne to the entire purchase money of the tract by the

Charge of Court below.

amount which she furnished. This is estimated by the plaint-
iffs as a fraction of which 7327 is the numerator and 8502 is
the denominator—about seventy-three and eighty-five hun-
dredths. I do not say that this is exactly correct. The jury
will have to determine from the evidence what the fraction
really is; but that is the claim, and if the jury find that frac-
tion to be a correct one, and find for the plaintiffs fully, they
may adopt it. If it is not correct, they must make their own
fraction and determine from the evidence how much she is en-
titled to recover. If you find that her claim to a trust in a
portion of this tract is not established, your verdict will be for
only one seventh of the land in dispute; and that is all I need
say about the proportion except this, in addition, that I will
hand you a paper at the conclusion of the charge which will
put substantially in writing what I have said. . . . . .

Now, the evidence as to where Mrs. Light's inheritance went,
namely, that it went into this land, and the circumstances
under which it was actually applied to the payment of the val-
uation money, are not in dispute, as I understand. I do not
recall any contradictory evidence upon this particular point,
and the jury would have no difficulty in finding from the evi-
dence that at the time this property was taken and the legal
title passed to the husband no money was actually paid.
About a year and a half afterwards, there appears to have been,
and no doubt was, a distribution of the father's estate, a settle-
ment between the heirs determining how much each one was
entitled to have at that time. The share that Susanna Light
was entitled to receive was then fixed by calculation, and was,
as it seems, applied in full toward paying the valuation money
of this tract. At that time her husband borrowed some money,
as I understand—at all events got some in some way, amount-
ing to $1,208 and a few cents, and put that in also. As I un-
derstand, also, those two sums—what he himself got and what
she was entitled to receive out of her father's estate—together
made up the entire valuation money of this tract. Now, you
will see that this was about a year and a half after the property
was taken by her husband and after the legal title actually
passed to him. The legal title passed to him when he appeared
in court, and, this tract having been adjudged to him at the
valuation, entered into recognizance for the payment of the

shares of the other heirs.  At that time the legal title to six
sevenths passed to him, and he was the apparent owner of that
much, on the record.  [The question, and the only question
in the case, therefore, in my judgment, is just this: Whether
the subsequent use of her share in her father's estate was a
mere loan by her to him, to enable him to discharge the obliga-
tion assumed by him in his recognizance, or whether it was the
carrying out of an agreement between herself and him, entered
into before the property was taken by him at the valuation,
this agreement being, as it is alleged, that he was to take for
her in her behalf and that she was to pay for the land.] [11]

We say to you distinctly that, if it was a loan by her to him,
she cannot recover more than one seventh of the land, and it
makes not the slightest difference that your verdict in that .
event would compel her to suffer a serious loss.  We have
nothing to do with that.  If she loaned the money to her hus-
band, she must abide by the risk; and if she loaned it to him
without taking such security as she could have taken, she must
bear the loss and not unload it on some other person.  [You
understand the question: What was the true agreement be-
tween the husband and the wife ?  If she lent the money to
him, then she cannot recover anything more than the one seventh
already mentioned.  If, however, there was an agreement be-
tween the husband and the wife, before the property was taken
by him, to the effect that he was to take the title in her right,
but for her benefit, at least in part, and if the agreement was
further that her share was to be used toward the payment of
the valuation money, and if then, in fulfilment of this agree-
ment, he did take the title in his own name, but in part at least
for her benefit, and if afterwards, in further fulfilment of the
agreement, the principal was largely paid for with money which
was then her own, she has a good claim to a resulting trust in
this property ; ] [12] that is, she may claim to be the true owner
of it as against her husband, or against the defendant, if you
find that he bought with notice of her title.  Notice, I believe,
is not denied.

There is a good deal of evidence in this case upon the one
side and the other, and the evidence upon either side is, in my
judgment, of much weight.  The jury must decide which wit-
nesses to believe, how far their testimony is probable, and what

Charge of Court below.

reasonable conclusions ought to be drawn. All these matters are exclusively for the jury. I repeat : [The evidence in this case upon either side is of much weight. The allegation that this was a loan by the wife to the husband is supported by a number of circumstances of considerable strength, circumstances which, if the contest were between a stranger and the husband, would decide me,. I think, to withdraw this case from the jury and say that the verdict must be in favor of the defendant. But the contest is not between a stranger and a husband ; the contest as to whether or not there was a trust is really between the husband and the wife. We are concerned with their mutual dealing, and this must be borne in mind by the jury, viz., the closeness of the relationship, and the fact growing out of such relationship, that the husband may properly do a great many things about his wife's property, really as her agent, although his acts may seem to be those of an owner in his own right. To take one illustration : If the contest here were between Reuben Light, who has the legal title to the property, and some other person who claimed to be the true owner of it, and that Light was holding the title in trust for him, and if it were shown, as it has been shown in this case, that Light exercised various acts of ownership over the property, with the knowledge and permission or consent of the other person, that, as I have said to you, unless there was a great deal more on the other side, I would incline to consider as final. But in this case, there are Light and his wife, and they are living together ; he was her husband, and naturally and properly did much for her which she did not or could not, in the ordinary course of affairs, do for herself, and the jury must keep their relationship in mind in passing upon the true weight to be given those circumstances.] [13] If they are led. to the conclusion that this was a loan from her to him ; that he really did take the title for himself, as the record indicates on its face, all those acts of ownership by him are entirely consistent with that state of affairs, and your verdict ought then to be in support of the defendant's position. Upon the other hand, if the transaction was really a trust, many of these acts, and perhaps all of them—that will be for the jury to say, but many of them at least—are consistent also with the fact that he was her husband ; that he was acting for her and about her affairs, and would not be inconsis-

Charge of Court below.

tent with the fact that she was the true equitable owner of much of the property, although he held the legal title.

As I have said to you, and now repeat, the evidence upon the one side and the other of the question is of considerable strength, and the jury will have to consider it with great care; for you must remember when these cases come into court that they are attacks upon paper titles, attacks upon records, and therefore they must be regarded with considerable scrutiny and with great care,—even, I may say, with suspicion, by courts and juries. I am not intimating that there are suspicious circumstances or fraudulent circumstances about this case, or about any other, but only that we ought to regard them with much hesitation, until made out by such evidence as the law has made necessary. Titles are dependent to a great extent upon records; and, in cases of alleged resulting trusts which are supported by oral evidence alone, the law properly requires that the evidence to prove the needful facts must be of a very high quality. It has been said in a very recent case, and I follow that instruction, that every element of such a trust must be made out by evidence which is clear, explicit and unequivocal; evidence which is clear, evidence which is direct and positive, and evidence which is not doubtful. Every element of such a trust must be proved by clear and explicit and unequivocal evidence; and if any element of the case fails in these respects, although the other elements may be made out by evidence which comes up to the proper standard, the case fails.

Applying that to this case, [before the plaintiff here can recover upon the ground of a resulting trust, she must prove an agreement made before the taking of the land by her husband, an agreement such as I have already indicated to you; and she must also prove that in pursuance of that agreement her money was applied—not afterwards applied voluntarily by herself; that is not enough, but that her money was so applied in fulfilment of the agreement; and if the agreement entered into before the land was taken by her husband did not include this fact, namely, that she was to apply her money to the payment, then we say to you that you must find for the defendant's position, that is, in her favor for one seventh only; in other words, the agreement preceding the taking of this land must have provided these two things: first, that her husband was to take the

land for her benefit, and, secondly, that her money was to pay for it.] [14]

The plaintiffs' points I consider to be fully answered in the charge. The defendant's points may require an answer in detail:

1. That the evidence of the plaintiffs is too vague, doubtful and uncertain to overcome the record evidence of the title of Reuben L. Light to the undivided six sevenths of the land in controversy, and to warrant its submission to the jury; and that it is the duty of the court to instruct the jury to find in favor of Daniel W. Zeller, one of the defendants, for the undivided six sevenths of said land, and in favor of Susanna Light for the undivided one seventh thereof.

Answer: Refused.[2]

2. That the evidence on part of the plaintiffs is insufficient to warrant the court in submitting the question in controversy to the jury; and that the court should withdraw the same from their consideration and give binding instructions to find in favor of Daniel W. Zeller for the undivided six sevenths part of said land, and in favor of Susanna Light for the undivided one seventh thereof.

Answer: Refused.[1]

3. That the whole of the plaintiffs' evidence is insufficient to overcome the records of the Orphans' Court of Lebanon county in the proceedings in partition; and the court should instruct the jury to find in favor of Daniel W. Zeller for the undivided six sevenths of said land and in favor of Susanna Light for the remaining one seventh thereof.

Answer: Refused.[3]

4. That where written instruments are sought to be reformed, juries must not hesitate or doubt; they must have clear convictions; they must believe the witnesses, and must find the facts in issue definitely and distinctly established; and this rule is to be applied with greater force to the impeaching of records of a court acting upon matters within its jurisdiction.

Answer: The effort here is not to reform a written instrument, but to establish a resulting trust. To succeed in this effort, every element of such a trust must be made out by evidence which is clear, explicit and unequivocal.[4]

5. That a resulting trust is raised only from fraud in obtain-

Charge of Court below.

ing the title, or from payment of the purchase money at the time when title to land is acquired.

Answer: Affirmed as a general proposition. But we are also of opinion that if husband and wife agree that the husband shall take title to land in partition for the wife's benefit, and that her money shall pay for it, and if in fulfilment of that agreement the wife's money is afterwards so applied, this payment would relate back to the original agreement, and a resulting trust would exist in her favor, although her money was not actually paid at the time when the legal title formally passed to the husband. Whether in this case the facts are so is for the jury, and the wife must establish them by evidence which is clear, explicit and unequivocal.[5]

6. That in the absence of fraud a record cannot be impeached and contradicted by parol evidence.

Answer: Affirmed as a general proposition; but by sufficient evidence, as just explained, a legal title by record may be shown by parol to be held in trust.[6]

7. That the record in the proceedings in partition of the real estate of Jacob Light, deceased, is conclusive evidence of the title of Reuben L. Light to the undivided six sevenths of the land in controversy, unless imbued with fraud proven by clear, full and satisfactorily sworn testimony.

Answer: Affirmed as to Reuben Light's legal title; but this may be shown by sufficient parol evidence, as just explained, to be held in trust.[7]

8. That the land in controversy, taken by Reuben L. Light in the right of his wife, in the proceedings in partition in the Orphans' Court, as evidenced by the record, vested in him, his heirs and assigns, after having entered into recognizance, also in evidence, for the payment of the shares of the other heirs; and that any payment of money or the release of her interest in the valuation money of other purparts of land taken by the other heirs, having been paid or given over a year after title vested in Reuben L. Light, her husband, was not such a payment of money or release of money due her as will establish a resulting trust on that account.

Answer: Refused. This question is for the jury, as explained in the general charge, to which we refer for fuller instructions upon this subject.[8]

Arguments.

9. That Reuben L. Light and wife being as but one witness, if the jury believe them, the testimony of another witness, or its equivalent, is necessary to have the weight and effect of two witnesses.

Answer: Affirmed.*

10. There is no presumption in favor of the wife's title; the husband's possession is presumed to be in his own right until the contrary be shown, and the wife's interest must be shown by clear and unequivocal evidence.

Answer: Affirmed.

11. A resulting trust is not created by implication of law in favor of one who pays part of the purchase money of real estate conveyed to another, unless such payment is made for some specific part or distinct interest in the estate; and, as there is no evidence in this cause showing that the money of the wife was anything else than a general contribution toward the entire purchase, it is not sufficient; and the court should give binding instructions to the jury to find in favor of the plaintiff for the undivided one seventh part only of the land in controversy.

Answer: Refused.[9]

—The jury returned a verdict in favor of the plaintiffs for $\frac{7287}{8502}$ of the land described in the writ. Judgment having been entered, the defendants took this appeal assigning for error:

1–9. The answers to the defendants' points.[1 to 9]

10–14. The portions of the charge embraced in [ ] [10 to 14]

*Mr. William M. Derr* (with him *Mr. W. D. Fisher*), for the appellants:

That the effect of the husband's acceptance of the property was to vest in him the undivided six sevenths thereof, and to leave in his wife her own undivided one seventh, is well established and was conceded: Kean v. Ridgway, 16 S. & R. 64; Weller v. Weyand, 2 Gr. 105. The question is therefore confined to the undivided six sevenths; and in order to raise a trust and to convert her husband into a trustee for the wife therefor, the latter must have established one of two positions: (1) That there was something more in the transaction than is

---

* See Yost v. Mensch, 141 Pa. 84.

implied from the mere violation of a parol agreement on the part of the husband to accept for the wife, or (2) that the wife paid the purchase money when the title was acquired.

1. The six sevenths interests of Mrs. Light's brothers and sisters did not vest in her on the death of the father. She was as much a stranger to the title to these interests as any stranger could be. The contract set up by her was one by which her husband promised to purchase these six sevenths for her. It was a parol contract; and when, instead of fulfilling the same, he purchased for himself, he merely violated a parol contract. " Unless there be something in the transaction more than is implied from the violation of a parol agreement, equity will not decree the purchaser to be a trustee : " Robertson v. Robertson, 9 W. 36 ; Haines v. O'Conner, 10 W. 320 ; First N. Bank v. Cowperthwaite, 10 W. N. 532. Two concurring elements are thus essential to the establishment of a trust, upon this theory of a purchase for another, to wit : (1) A contract to purchase for the other ; and (2) the person for whom the purchase is made must have an estate or interest in, or at least a bona-fide claim to the property purchased. But in this case the latter element is lacking.

2. It remains, then, to consider whether Mrs. Light furnished the purchase money in whole or in part. The rule upon the subject is thus stated : " A resulting trust, however, is raised only by fraud in obtaining the title, or from payment of the purchase money when the title is acquired. Payment of the purchase money subsequently, is not sufficient to raise a legal implication of a trust, as all the authorities show : " STRONG, J., in Barnet v. Dougherty, 32 Pa. 372. Two concurring elements are therefore essential to the establishment of a trust, on the theory of the payment of purchase money, to wit : (1) Payment of the purchase money ; (2) payment of it at the time of the acquisition of the title. But in this case the latter element is lacking. The purchase was made at the time of the acceptance and allotment by the decree of the court ; certainly, not later than the time of perfecting the recognizance. There was at that time no payment of purchase money. The recognizance itself was to secure the future payment thereof. What, then, does it signify that a year and a half afterwards, cross-releases were executed, effecting an appropriation of Mrs. Light's share of the estate to a discharge of the recognizance ?

3. And besides: When a trust is sought to be established as to part only of a property, either on the theory of a purchase for the benefit of another, or based upon the payment of the purchase money, in addition to the other elements heretofore shown to be essential to the quantity of interest the fractional part must be distinctly specified. There must be a contractual designation of this quantity. It must be an aliquot part. The furnishing of the purchase money must not be " as a general contribution, but the contribution of a specific, definite sum, to procure a correspondent interest or aliquot part of the estate: Bigley v. Jones, 114 Pa. 510 ; McGowan v. McGowan, 14 Gray 119. Moreover, there is no testimony whatever, in this case, showing or tending to show that it was part of the alleged prior agreement that Mrs. Light's share was to be used toward payment, excepting only that of the plaintiff and her husband. Hiram U. Light did not sustain them. The testimony of husband and wife must be regarded as one witness: Sower v. Weaver, 78 Pa. 443 ;* and the evidence as a whole was insufficient to nullify the record: Thomas v. Loose, 114 Pa. 35, Jackson v. Payne, 114 Pa. 67.

*Mr. Josiah Funck* (with him *Mr. J. M. Funck* and *Mr. A. Stanley Ulrich*), for the appellees :

1. In Bigley v. Jones, 114 Pa. 510, land in which the wife had an interest as heir was sold under proceedings in partition in the Common Pleas. The husband bought it, with an understanding and agreement between them that if he became the purchaser of the property she should retain her interest in it. The wife's share was never paid to her, but went into the land. It was held by this court that the wife had a resulting trust in the property : " If the parties contribute unequally, the trust results to each of them in proportion to the amount paid by each." So, in Harrold v. Lane, 53 Pa. 268, the land of a decedent was sold by order of the Orphans' Court and purchased by one of the heirs. Ejectment having been brought by the purchaser to obtain possession, another of the heirs proved that an arrangement had been made by which the land was to be purchased for four of the heirs ; that she paid the purchaser, as

---

* But see Yost v. Mensch, 141 Pa. 84.

part of the purchase money, a sum which, with her interest in the estate, would more than pay for her one fourth. Held, that such evidence, if believed, was sufficient to establish a resulting trust.

2. The resulting trust which may be proved by parol testimony, arises from the purchase being made with the proper moneys of the party asserting the trust, the deed being taken in the name of another : Rupp's App., 100 Pa. 531; Farrell v. Lloyd, 69 Pa. 239; Story's Eq. J., 6th ed., §§ 1200, 1258; Sheetz v. Marks, 2 Pears. 302; Cross's App., 97 Pa. 474; McLaughlin v. Fulton, 104 Pa. 161. In the case last cited, the party who had taken the conveyance to himself was held competent to establish the resulting trust as against the purchaser of his interest at sheriff's sale, and he was the only witness to the point. And the precise point decided in the present case, in relation to the trust resulting to the wife in the farm which her husband took for her at the valuation under proceedings in partition in the Orphans' Court, was ruled in . Hoover v. Hoover, 129 Pa. 201.

3. Husband and wife for many purposes are the agents of each other; she, in respect of the conduct of his domestic affairs; and he, in respect of the custody and management of her separate estate. When he has effected an insurance on houses in their joint possession but belonging to her, the law will presume her ratification of his act, if not her precedent authority to perform it, and will support the insurance for her benefit : Harris v. Insurance Co., 50 Pa. 349. They occupy towards each other a fiduciary relation of the most confidential character : Swisshelm's App., 56 Pa. 475; Darlington's App., 86 Pa. 523; the husband is his wife's guardian : Meckley's Est., 20 Pa. 481; Feig v. Meyers, 102 Pa. 15. In this case, the husband and wife both testified that the land was taken by the former for the latter. They were the parties to the arrangement, which the husband is willing to carry out in good faith. The purchaser had notice thereof, before he acquired his title, and stands upon no higher ground than the husband.

—On April 8, 1889, the judgment in the foregoing case was reversed as to the undivided six sevenths of the land, without

Arguments.

a new venire, opinion by Mr. Chief Justice PAXSON.* After-wards, on May 27, 1889, on motion, a re-argument was ordered.

*Mr. Derr* and *Mr. Fisher*, for the appellants.

Other than cases cited supra, counsel cited, upon the effect of the allotment and recognizance: Smith v. Scudder, 11 S. & R. 325; Hayes's App., 123 Pa. 110; Riddle's App., 37 Pa. 177, 181 ; Evans v. Ross, 107 Pa. 231. Upon the trust alleged, and the insufficiency of the evidence to establish it: 2 Sugden on V., 7th Am. ed., 912 ; Jones v. Backus, 114 Pa. 132; Erie etc. R. Co. v. Knowles, 117 Pa. 82; Bitner v. Boone, 128 Pa. 567.

*Mr. Funck* and *Mr. Ulrich*, for the appellees :

1. The wife was a purchaser of so much of the land as she paid for with her own money. There was a distinct agreement entered into between the wife and her husband, that he should take the land at the valuation for her. This question was sub-mitted to the jury under proper instructions, and they found in favor of the wife. Certainly, he could take the land for her, if directed by her to do so. In this, as in many other matters, he could act as her agent, without any power of attorney ; and, taking the land for his wife, she became the party beneficially interested, just as is a ward when land is taken for him by his guardian: Cowan's App., 74 Pa. 329, 337 ; Thompson v. Stitt, 56 Pa. 156, 159 ; Morris v. Garrison, 27 Pa. 226, 228. The record shows, however, that in the election to take, the hus-band took in right of his wife ; the words " for her " being evi-dently omitted by mistake. Evidence establishing that the record was not properly made up was competent: Bavington v. Clarke, 2 P. & W. 115 ; and the mistake was one which could be corrected, being one of the three recognized heads of equity jurisdiction : Brightly's Eq., § 50.

2. But, at all events, no title vested in the husband until the recognizance was entered into to secure the other parties in interest their shares of the purchase money: Smith v. Scud-der, 11 S. & R. 325; Walton v. Willis, 1 Dall. 285, 351 ; and the rule is the same when land is adjudged to the husband in

---

* The opinion is printed in 29 W. N. 56, but, being withdrawn by the or-der for the re-argument, the reporter is instructed not to report it officially.

Arguments.

right of his wife: Bellas v. Evans, 3 P. & W. 479. The wife became one of the principal recognizors, in fulfilment of her agreement with him that he should take the land for her and she would apply her inheritance in payment. The recognizance was substituted for the land; it was the wife's as well as the husband's, and each of them took as much of the land in fee as they each paid for: Stehman v. Huber, 21 Pa. 260; Thompson v. Stitt, 56 Pa. 156; Snively's Est., 129 Pa. 250. Having entered into the recognizance, and afterward paid $7,294.32 of the money thus secured to the other heirs, she acquired title to the property to the extent that her private estate was applied to its payment. At the very inception of the title, she gave her obligation for the payment of the purchase money and afterwards paid it. She was abreast with her husband in the execution of the recognizance, and in advance of him in the payment.

3. If not a purchaser herself, has the wife a resulting trust in the property to the extent that her money was applied? An affirmative answer to this question must be founded on the assumption that the legal title to the whole farm is in the husband. Under the facts in evidence, if this proceeding vested the right to the entire farm in the husband, she was with him in the acquisition of the property, at the very inception of the title, and this under all the authorities secures to her a resulting trust, to the extent that her money was applied in the payment of the purchase money: Bigley v. Jones, 114 Pa. 510; Harrold v. Lane, 53 Pa. 268. In Rupp's App., 100 Pa. 531, some months prior to April 1, 1878, the husband entered into articles with the vendor for the purchase of the land for $2,000. The wife then was not in any manner connected with the business. On April 8th, she paid through her husband $1,500, and desired the conveyance to be made to her. Her husband refused and took the title to himself. Held, she had a resulting trust in the proceeds proportionate to the amount she paid. See, also, Hoover v. Hoover, 129 Pa. 201; Nixon's App., 63 Pa. 283.

4. That a resulting trust arises only in favor of one who pays for some specific interest in the estate, is not the law. No authority can be found to sustain the position. " If parties contribute unequally, the trust results to each of them in pro-

portion to the amount paid by each : Hill on Trustees, 2d Am. ed., 149 : " Per CLARK, J., in Bigley v. Jones, 114 Pa. 510. The learned justice did not say, that " such contribution must not be a general contribution," etc. " But with us all distinctions on this head are overlooked or disregarded ; and it seems to be settled by Gregory v. Setter, 1 Dall. *193 ; German v. Gabbald, 3 Binn. 302, and Wallace v. Duffield, 2 S. & R. 521, that a purchaser with trust money, in whole or in part, gives the owner of the money a correspondent ownership in the land : Kisler v. Kisler, 2 W. 323.   And see Sheetz v. Marks, 2 Pears. 302 ; 2 Pomeroy's Eq., § 1038.

OPINION, MR. JUSTICE STERRETT :

This action of ejectment was brought by Susanna Light and Reuben Light, her husband, in right of said Susanna, against Daniel W. Zeller and another, to recover possession of a tract of land sold in 1884 by the sheriff as the property of said Reuben Light, on an execution in favor of John H. Uhler, and purchased by said Zeller with notice that the same was claimed by the beneficial plaintiff in her own right, under proceedings in partition of the real estate of her deceased father, etc.

In June, 1874, Jacob Light died seised of several tracts of land, which thereupon descended to his seven children and heirs at law, one of whom is the said Susanna Light, the beneficial plaintiff below.   Proceedings for the partition of said estate were then commenced ; and in August following the parties were brought into court to accept or refuse the several purparts at the valuation.   Reuben Light, in right of his wife, appeared in court, and elected to take purpart designated No. 2 in the diagram annexed to the inquisition ; and, the same having been accordingly allotted to him, he and his wife, as principals, with two approved sureties, forthwith entered into recognizance conditioned " that Reuben Light and Susanna Light pay or cause [to be paid unto the other heirs and legal representatives of said decedent their respective shares and proportionable parts of, in, to, and out of that part of said real estate marked in the diagram aforesaid No. 2, valued and appraised at $8,021.24, . . . . . then this recognizance to be void ; otherwise to remain in full force and virtue."   At the same time the remaining purparts were all allotted to other heirs,

and their respective recognizances were taken in substantially the same form. It does not appear that the valuation money, cost of partition, or any part of either was paid at that time by either of the parties to whom the purparts were respectively allotted, or by any one in their behalf. On the contrary, it was clearly shown that about eighteen months thereafter a mutual adjustment and settlement of the owelty among the heirs was effected, in which those who had not taken land to the amount of their respective shares of the estate, received the difference from those to whom land valued at more than their respective shares had been allotted; and thus the several cross-demands under the respective recognizances were legally and equitably adjusted, and mutual releases executed. The rights and liabilities of the respective parties, however, were fixed at the time the recognizances were given, and could not have been changed without the consent of all concerned. In this connection, it should be observed that the cash balance, $19,238.01, shown by the administrator's account, was embraced in said final settlement.

The purpart taken by Reuben Light, in right of his wife and for her benefit, as the jury found, was valued at $1,208.19 more than her full share of her father's estate, including said cash balance. Under the terms of her recognizance, Mrs. Light was, of course, bound to account for and pay that excess to such of her brothers and sisters as received less than their full shares; and for same reason she could not have required either of them to pay anything to her on account of the purparts allotted to them, respectively, because, as a party to the partition and an obligor in her own recognizance, she was indebted to them in a greater sum. She was therefore bound to account to them for said $1,208.19 excess over her own share; but, it appearing that the money with which that amount was paid was furnished by her husband, it was held that he thereby acquired an interest in the land to that extent, amounting to about twelve eighty-fifths. There is not a particle of evidence tending to show that he contributed a farthing more than the sum named towards procuring the title to the property in controversy.

It was virtually conceded that, in any event, Mrs. Light, as one of the seven heirs, was entitled to a verdict for one undivided seventh of the land. As to the greater part of the re-

Opinion of the Court.

maining six sevenths, her contention was that she was entitled
to recover under and by virtue of a resulting trust springing
from an agreement between herself and husband, in pursuance
of which he appeared in court and, in her right and for her
benefit, elected to take the purpart in controversy, and her
"inheritance" or interest in her father's estate was applied to
payment of the owelty of partition. Evidence was introduced
tending to prove the alleged agreement between Mrs. Light
and her husband, that he should appear in her right and elect
to take one of the purparts for her benefit, and that her "in-
heritance" should be applied to the payment of the interests
of the other heirs in the valuation money of the purpart thus
taken, and that the agreement was carried out in good faith,
by her entering into recognizance, and thus appropriating her
interest in the estate to the purpose contemplated by said agree-
ment.

Reuben Light, the husband, testified, in substance, to that
understanding and agreement between himself and wife; that,
in pursuance thereof, he appeared in court, and elected to take
the land in controversy at the valuation, for her benefit; that
he did so at her request, and in pursuance of their previous
agreement that the owelty of partition should be paid out of
her share of the estate, "her inheritance, her share, her part
that she was to receive from her father's estate." He further
testified in relation to procuring sureties on the recognizance,
the execution of that instrument by his wife, etc., and the ap-
propriation of her entire interest in her father's estate to pay-
ment of the owelty, and that the deficiency, $1,208.19, was
raised and paid by himself. The testimony of Mrs. Light was
to the same effect. Referring to the land in controversy, she
said: "My husband took it at the valuation for me. We
talked about it, as to the manner in which it was taken, before
we took it. We agreed that he should take the land at the
valuation for me, and should pay for it with my inheritance. . . .
My inheritance all went into this farm." Again, referring to
the recognizance she said: "As soon as the land was taken at
the valuation, we went down in the office. Went down there
to write our names to the paper. We went down right away
after the land was taken. Reuben signed his name first. I
wrote mine above his name. He gave me the pen. I don't

remember whether the sureties were there or not. . . . . A division was made of my father's estate, after the land was taken at the valuation." Both sureties in the recognizance testified that Reuben Light requested them to become sureties for his wife; "that she was taking the farm at the valuation," etc.

Without referring more in detail to the somewhat voluminous testimony tending to prove that pursuant to previous agreement the land in controversy was taken by Reuben Light in right of his wife and for her benefit, and that, with the exception of the above-mentioned $1,208.19, the owelty was provided for by a contemporaneous appropriation of Mrs. Light's entire interest in her father's estate, it is sufficient to say that the evidence was not only competent and proper to be submitted to the jury, but it was also clear and convincing. The question of the resulting trust, on which the case turned, was fully and fairly submitted in a comprehensive and well-guarded charge, to which, as a whole, no just exception can be taken. After explaining to the jury the nature of the alleged resulting trust upon which the beneficial plaintiff mainly relied, the learned judge said: "It is claimed that she is entitled to a resulting trust in a considerable portion of this land, based upon the fact, as alleged, that she furnished a considerable portion of the purchase money; that she was the true buyer of this portion; and that, although her husband took the title, he took it under an agreement which compels him to hold it in trust for her. It is conceded on both sides that in any event she is entitled to an undivided one seventh of this land, and for that amount at least a verdict must be rendered in her favor. The dispute is whether she is entitled to any more than that." Referring to the testimony, as to what disposition was made of Mrs. Light's interest in her father's estate, he further said: "That it went into this land, and the circumstances under which it was actually applied to the payment of the valuation money, are not in dispute, as I understand. I do not recall any contradictory evidence upon this particular point; and the jury will have no difficulty in finding from the evidence that at the time this property was taken and the legal title passed to the husband, no money was actually paid. . . . . If she loaned the money to her husband, she must abide by the risk; and if she loaned it to him without taking such security as she could have

taken, she must bear the loss, and not unload it on some other person.   You will understand the question : What was the true agreement between the husband and the wife ?   If she lent the money to him, then she cannot recover anything more than the one seventh already mentioned.   If, however, there was an agreement between them, before the property was taken by him, to the effect that he was to take  the  property in her right, but for her benefit, at least in part, and if the agreement was further that her share was to be used towards the payment of the valuation money, and in fulfilment of that agreement he did take  the  title in his own  name, but in part at least for her  benefit, and, in  further fulfilment of  the  agreement, the principal was largely paid for with  money which was then her own, she has a good claim to a resulting trust in this property ; that is, she may claim to be the true owner of it as against her husband or against the defendant, if you find that he bought with notice of her title.     Notice, I believe, is not denied." Again, after referring to the  closeness of  the relationship between  the  parties to the  alleged trust, and  the  fact, growing out of that relation, that the  husband may properly do a great many things about his wife's property, really as her agent, although his acts may seem to be those of an owner in his own right, the  circumstances relied on by the defendant to show that Mrs. Light's share of her father's estate was loaned to her husband to enable him to acquire title in his own right, and for his own benefit, and the great care and caution  that should be exercised in sustaining resulting trusts which are supported by oral evidence alone, the learned judge rightly instructed the jury that the law properly requires a more than ordinary high degree of evidence :  " Every element of such a trust  must be proved by clear. and explicit and unequivocal evidence, and, if any element of  the  case fails in these respects, although the other elements may be made out by evidence which comes up to the proper standard, the case fails."

In the light of these and other pointed instructions, as to the facts necessary to constitute the alleged resulting trust, and the degree of proof required to establish those facts, the jury doubtless considered all the evidence bearing upon the questions of fact submitted to them.   By their verdict they ignored the defendants' contention, and, sustaining that of the plaintiff,

found in her favor for a fraction less than seventy-three eighty-fifths of the land in controversy. All the evidence was properly for the consideration of the jury; and, having been fairly submitted to them, there appears to be no reason why their conclusions of fact upon which the verdict must have been based, should not be accepted as correct. If the case were before us on a motion for new trial, there might, perhaps, be some propriety in considering circumstances to which the jury appears to have attached less importance than did the defendants below, but we are not called upon to consider it in that light. The acts and declarations of Reuben Light, ignoring his wife's ownership of the land, permitting it to be assessed for taxation as his own, confessing judgment in favor of his wife, claiming the benefit of the exemption law, etc., were susceptible of explanation. Moreover, they were acts of the husband alone, for which the wife should not be held responsible, unless she actively participated therein.

The facts established by the verdict, that, pursuant to previous agreement, the land in controversy was taken by Reuben Light for the benefit of his wife, and her entire interest in her father's estate appropriated to payment of the valuation money, etc., raise a resulting trust in her favor to the extent of the amount thus contributed towards the procurement of the title. In the absence of rebutting circumstances, it is presumed that one who pays the purchase money or furnishes the consideration for the conveyance of land intends to become the owner of it, although as a matter of convenience, or for some collateral purpose, the conveyance may be made to another; but the principle recognized in Barnet v. Dougherty, 32 Pa. 371, and that line of cases, is that the consideration—whether it be money or other valuable thing—necessary to raise a resulting trust as to real estate, must be paid or furnished when the title is acquired. In Harrold v. Lane, 53 Pa. 268, the consideration was payment by defendant, as part of the purchase money, of a sum which, with her own interest in the property, amounted to more than one fourth. In Hoover v. Hoover, 129 Pa. 201, the consideration relied on to raise a resulting trust in favor of defendant was the assignment of his interest in his father's estate to the plaintiff, to be used in adjusting the valuation money of the land alleged to have been taken by the latter for the benefit of the former.

It is claimed that the case now before us is not within the
principle above referred to, because the beneficial plaintiff's
interest in her father's estate was not actually applied to pay-
ment of the owelty of partition for several months after the
legal title became vested in her husband by the decree in par-
tition, and hence there can be no resulting trust in her favor
arising from her having furnished part of the consideration
when the title was acquired. This contention, we think, ignores
the legal effect of the partition and Mrs. Light's recognizance.
The recognizance, proprio vigore, operated as an appropriation
of her interest in the entire valuation money, as far as it went,
to the appraised value of the purpart taken by her husband for
her benefit. The fact that the actual calculation and adjust-
ment of owelty among the heirs was not made for several months
after the recognizance was given, could not affect the right of
the other heirs to insist on having the valuation money applied
as it was. The rights of the parties respectively were fixed
when the recognizances were given and the partition com-
pleted. They were as absolutely fixed as if Mrs. Light had then
and there assigned on the record all her interest in the valua-
tion money of the several purparts, in payment pro tanto of
the valuation money of the purpart taken for her benefit. As
already stated, Mrs. Light was not in a position to require any
of the other heirs to pay her anything on account of her in-
terest in the appraised value of the purparts allotted to them.
Cross-claims or demands were created by the respective recog-
nizances against each of those to whom purparts were awarded.
The claims and demands of the others against Mrs. Light,
under her recognizance, exceed her claims against them. In
other words, neither of them was her debtor for owelty. On
the contrary, as shown by the subsequent calculation, she was
their debtor in the aggregate sum of $1,208.19. That sum was
paid by her husband, and to that extent only had he any in-
terest in the land in controversy. Not a farthing more was
contributed by him to the procurement of the title in severalty.
The residue over seven thousand dollars was his wife's interest
in her father's estate. That sum was appropriated to the pay-
ment of the owelty in pursuance of the agreement between Mr.
Light and his wife, made, as the jury found, on the eve of the
allotment in court. That agreement was, in effect, executed
at the time the legal title became vested in him by the decree

of court and the execution of the recognizance by himself and his wife.   As heretofore observed, Mrs. Light's recognizance operated, proprio vigore, as an appropriation of her interest in the entire valuation money, as far as it went, to the appraised value of the purpart taken by her husband for her benefit.   It was not in her power, nor in the power of her husband, to thereafter appropriate it to any other purpose without the consent of the other heirs interested in the owelty of partition.   By virtue of the recognizance, both of them were bound by that appropriation to the payment of the owelty to which the other heirs were entitled.   Having thus furnished, to the extent above stated, the consideration of the land in controversy, at the time the legal title became vested in her husband for her benefit, Mrs. Light is justly and equitably entitled to a corresponding interest in the property.   As established by the verdict, the agreement between her and her husband, made immediately before the allotment, was that the land should be taken for her, and that her " inheritance " or interest in the valuation money should be applied as it was.   The agreement was carried out in good faith, and it would be most unjust and iniquitous to permit a volunteer relative, cognizant of all the facts and circumstances, to deprive the beneficial plaintiff of what in fact represents her interest in her father's estate.   As I view the facts, which the verdict of the jury, by necessary implication, has clearly established, it would be little short of judicial robbery to permit him to do so.   No court of justice would allow the husband to repudiate the agreement under which he acquired the legal title for the benefit of his wife, and at her expense.   The plaintiffs in error, with notice of her interest in the land, certainly stand in no better position.

Brief reference has already been made to plaintiffs in error's contention and the character of the evidence relied on to support it.   It is not proposed to spend any further time in considering it.   It was all fairly submitted to the jury, and has been passed upon by them.   The logic of the verdict is that it did not enter very largely into the facts found by the jury.   To enter upon a more extended consideration of the evidence referred to, would be merely threshing old straw over again, an occupation which generally results in neither edification nor profit.

Judgment affirmed.

Opinion Dissenting.

Mr. Chief Justice PAXSON, dissenting:

I regret that I cannot agree to this judgment. I think the decision goes one step beyond any heretofore decided, and, I fear, in the wrong direction. There is nothing more pernicious than secret parol trusts. The statute has done much to cut them up by the roots, and we have left resulting trusts only, viz., trusts arising from the payment of the purchase money at the inception of the title, and those resulting from fraud in obtaining the title. This case comes as I view it, within another class not heretofore recognized by the law, viz., trusts resulting from the loan or advance of money by a wife to her husband, after he has acquired the title, to assist him in paying for the property. The case was this:

Under proceedings in the Orphans' Court in partition, Reuben L. Light, one of the plaintiffs below, was allotted a purpart, consisting of the farm in controversy. He took it in right of his wife, who was one of the heirs, and joined with her in the recognizance. He did not take her share of the farm; that remained in her. He took only the interest of the other heirs. The allotment was confirmed by the court, and a deed therefor duly made to him. No money was paid at the time the title passed to Mr. Light; it was paid more than a year afterwards. Mr. Light furnished a portion of the purchase money; the balance thereof was paid by the application of his wife's share of the estate, the other heirs joining in a release to him. The legal title thus passed to the husband; his wife knew all about it; there is evidence that she wished him to have the credit of owning the property; there was neither allegation nor proof that any concealment, fraud, or imposition was practiced upon her. With the title in this condition, Mr. Light exercised acts of ownership over the property for several years. The buildings were insured in his name; in 1883 the barn was destroyed by fire, together with its contents; Mr. Light made oath that both barn and contents belonged to him, and received the insurance money as his own; the property was assessed in his name from the time of the partition in 1874 until the sale by the sheriff in 1884; upon a writ of fieri facias issued in 1884 the husband claimed the products of the farm under the exemption laws as his own property, which were accordingly appraised and set apart to him under said claim, while his wife claimed only the

Opinion Dissenting.

household furniture.    Finally, in the year last named, Reuben L. Light became financially embarrassed, and, desiring to secure to his wife the money she had advanced him, confessed a judgment in her favor for eight thousand dollars.    The judgment, however, was too late to be of any practical use, as the farm was already heavily encumbered.    It was therefore removed from the records by direction of Mrs. Light, and the bolder and more successful measure adopted of setting up a parol trust of the real estate itself.    And thus, after acquiescing in her husband's title for ten years ; after he had contracted debts on the strength of it, she has succeeded in setting aside a solemn deed, the decree of the Orphans' Court, and the rights of her husband's creditors.

And this was done mainly upon the testimony of the husband and wife.    If there had been any evidence that a fraud had been practiced by the husband upon the wife, the case would present a different aspect.    But there was none.    As before observed, Mrs. Light knew all about it.    She was present in court at the allotment ; she heard all that took place ; she knew that the farm was awarded to her husband, while the shares of her married sisters were at the same time awarded to them, and not to their respective husbands ; she knew the title was placed in her husband's name, and in the course of her long examination and cross-examination upon the trial below she did not so much as hint that she was deceived in this respect, or that a fraud had been practiced upon her.    This silence was especially significant in view of her declaration that she wanted her husband to have the credit of owning the property, and strengthens the testimony upon this point.    Stripped of the gloss which has been thrown around the case, it is merely that of a married woman who permits her husband to take the title in his own name ; contributes a portion of the purchase money, not at the inception of the title, but over a year afterwards ; allows him to retain the title and exercise acts of ownership over it for ten years, and until he becomes insolvent, and then sets up her secret equitable title to defeat the claims of his honest creditors.    Such a transaction may be well likened to a pirate ship at sea, which hoists friendly signals to lure unsuspecting vessels within its reach, and then displays the black flag.

Opinion Dissenting.

That these parties regarded the transaction as a loan from the wife to the husband, is at least morally shown by the fact of the confession of the judgment by the husband in his wife's favor. Had the judgment been available to protect her interest we would never have heard of this alleged equitable title. It is true, she repudiated it afterwards, doubtless by the advice of counsel; but few persons will believe that the judgment was confessed without her knowledge and approval in the first instance.

I confess I am unable to see how the fact that Mrs. Light joined in the recognizance with her husband, operated by its own force as an appropriation of her share of her father's estate to pay for her husband's farm. Had she taken the farm herself this might have been the case. The actual appropriation, as before stated, was made more than a year after the partition. At that time she could have demanded her share of her father's estate, which would have compelled her husband to pay the money. This fairly illustrates the strain of the case; for, under all the authorities, the trust must result from the payment of the purchase money at the very inception of the title.

I have referred to this case as being a step in advance of any heretofore decided. In all of them, as I understand them, there has been fraud or concealment practiced upon the wife. In such cases, I would say, as the authorities say, let the wife recover. But I am utterly opposed to the species of financial legerdemain practiced in this case. The rights of married women have been greatly enlarged by the course of recent legislation and judicial decision. This involves corresponding responsibility. The legal fiction of the unity of the person of husband and wife no longer exists to the extent that it formerly did. I am of opinion that our decisions should be moulded to meet the changed circumstances. The time has gone by for treating a married woman like a spoiled child who cries for her rattle. I would reverse this judgment.

Mr. Justice GREEN and Mr. Justice MITCHELL noted their concurrence in this dissent.